IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGIA FRAZIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:02cv396-VPM |
| | ) | [WO] |
| JO ANNE B. BARNHART | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Georgia Frazier ["Frazier"] filed this action seeking review of a final decision of the defendant ["Commissioner"] (Doc. # 1) pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) (2000).  Upon review of the record and the briefs submitted by the parties, the court concludes that the Commissioner's decision should be affirmed.

## I.    FACTS AND PROCEDURAL HISTORY

Frazier protectively filed for supplemental security income ["SSI"] benefits on 22 June 1994, contending that she became disabled on 16 March 1994, approximately two months before her right kidney was surgically removed (R. 101-02, 177-203).  In applying for benefits, she correlated her disability with the surgery and described her condition as affecting her ability to stand and walk (R. 133).  Frazier, who is currently 63 years old,

completed the ninth grade (R. 18),[1] and she previously has been employed as a preschool aide, school bus driver, and cook (R. 37-38, 66-67).

Frazier's application was denied initially and upon reconsideration (R. 104-05, 108-10). A hearing before administrative law judge ["ALJ"] Michael Brownfield resulted in an unfavorable decision (R. 228-39), but her request for review was granted, and the Social Security Administration's ["SSA"] Appeals Council ["AC"] remanded the case back to the ALJ with instructions for "further proceedings" (R. 246).

ALJ Michael D. Anderson subsequently conducted a hearing and issued an opinion finding Frazier disabled as of 12 August 1997, Frazier's 55th birthday (R. 24).[2] Again, Frazier sought review of the ALJ's decision, but the AC this time denied her request, and the ALJ's decision thus became the final decision of the Commissioner (R. 3, 6-12).

Frazier then filed this timely lawsuit (Doc. #1), but the case was remanded prior to reaching the merits pursuant to sentence six of 42 U.S.C. § 405(g) to allow the Commissioner to locate the file (Doc. # 12). This court retained jurisdiction, and the Commissioner moved to reopen the case in December 2004 (Doc. # 14).

---

[1]In her disability report and at her administrative hearings, Frazier claimed to have completed the tenth grade (R. 37, 66, 137). She then clarified that she attended but did not complete tenth grade (R. 82).

[2]The regulations governing disability determinations classify persons 55 years of age and older as being of "advanced age," which may be the deciding factor, as in this case. 20 C.F.R. § 416.963(e); 20 C.F.R. pt. 404, subpt. P, app. 2.

## II.    STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Miles v. Chater*, 84 F. 3d 1397, 1400 (11th Cir. 1996) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  The court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied," *Kelley v. Apfel*, 185 F.3d 1211 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997)).[3]  This is true despite the existence of substantial evidence "contrary to the findings of the ALJ." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles*, 84 F. 3d at 1400 (citations omitted).

## III.    DISCUSSION

### A.    *Standard for Determining Disability*

An individual who files an application for Social Security disability benefits must

---

[3]In *Graham v. Apfel*, 129 F. 3d at 1422, the Court of Appeals stated that:

> Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

prove that she is disabled, which means that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A) (2000); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a) (2000).

The regulations governing disability determinations provide a five-step sequential evaluation process that the ALJ must follow to determine whether a claimant has proven that she is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also* **Ambers v. Heckler**, 736 F.2d 1467, 1469 (11th Cir. 1984); **Williams v. Barnhart**, 186 F. Supp. 2d 1192, 1195 (M.D. Ala. 2002).  If the claimant is not currently engaged in substantial gainful activity, the ALJ must determine whether she suffers from a severe impairment (i.e., a medically determinable condition that significantly limits the claimant's ability to perform basic work-related activities) that has lasted or is expected to last 12 months or more.  §§ 404.1509, 416.909, 404.1520(a)(4)(I)-(ii), 416.920(a)(4)(I)-(ii).  If so, and the impairment(s) is of such severity as to meet or medically equal a condition described in the SSA's "Listing of Impairments," then the claimant will be found to be disabled.  §§ 404.1520(a)(4)(iii); 404, subpt. P, app. 1; 416.920(a)(4)(iii).

If the claimant's severe impairment(s) does not automatically qualify her for disability benefits, the ALJ must then assess her residual functional capacity ["RFC"], which represents "the most [a claimant] can still do despite [her] limitations."  §§ 404.1545(a), 416.945(a). Considering her RFC, the ALJ must determine whether the claimant is able to perform the

4

physical and mental demands of her past relevant work. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If not, the ALJ must determine whether, considering her RFC, age, education, and past work experience, the claimant is capable of performing other jobs available in significant numbers in the national economy. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c).

**B.**   ***Application of the Standard: The ALJ's Findings***

After discussing the legal standards and the evidence in the record, the ALJ made the following findings:

1.   There is no evidence that the claimant has engaged in substantial gainful activity since the alleged disability onset date.

2.   The medical evidence establishes that the claimant has a history of chronic pyelonephritis, and staghorn calculus, status post right nephrectomy; non-insulin dependent diabetes mellitus, possible diabetic neuropathy of the lower legs; hypertension, obesity, degenerative joint disease of both knees, decreased visual acuity with early cataracts, and lumbar strain, which are "severe" impairments, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Supart P, Regulations No. 4.

3.   Prior to August 12, 1997, the claimant's subjective allegations of pain and functional limitations are not fully credible and not supported by the evidence of record, which neither confirms the severity of the symptoms alleged, nor the existence of an impairment or combination of impairments which could reasonably be expected to give rise thereto.

5

4.      Prior to August 12, 1997, the claimant had the residual functional capacity to perform her past relevant work as well as other light and sedentary jobs that existed in significant numbers in the national economy.

5.      Prior to August 12, 1997, the claimant was 54 years old, which is defined as closely approaching advanced age (20 CFR 416.963).

6.      The claimant is currently 56 years old, which is defined as advanced age (20 CFR 416.963).

7.      The claimant has nine years of education (20 CFR 416.964).

8.      The claimant does not have any acquired work skills, which are transferable to the skilled or semiskilled work functions of other work (20 CFR 416.968).

9.      Prior to August 12, 1997, based on an exertional capacity for light work and the claimant's age, education, and work experience, section 416.969 of Regulations No. 16 and Rule 202.11, Table No. 2, of Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

10.     Although the claimant's additional nonexertional limitations would not allow her to perform the full range of light work, using the above-cited rule as a framework for decisionmaking, there were a significant number of jobs in the national economy which she could have performed prior to August 12, 1997.

11.     The claimant was not under a "disability," as defined in the Social Security Act, at any time prior to August 11, 1997 (20 CFR 416.920(f)).

12.     Beginning August 12, 1997, section 416.969 of Regulations No. 16, and Rule 202.02, Table No. 2, 20 CFR Part 404, Appendix 1 to Subpart P, directs that the claimant, considering her residual functional capacity,

age, education, and work experience, be found "disabled."

13.     The claimant has been under a "disability" as defined in the Social Security Act, since August 11, 1997, but not prior thereto (20 CFR 416.920(f)).

(R. 23-25).

Thus, Frazier failed in part because the ALJ determined that prior to 12 August 1997 she could have performed jobs that were available in significant numbers in the national economy.

Frazier disagrees and raises numerous arguments in support of her contention that the ALJ's opinion is not supported by substantial evidence in the record.   Specifically, she contends that the ALJ

1.     failed to adhere to the instructions of the AC on remand;

2.     erred in assessing her RFC;

3.     posed an incomplete hypothetical question to the vocational examiner;

4.     failed to properly assess the claimant's credibility, which Frazier correlates to the ALJ's alleged failure to develop the record regarding Frazier's alleged mental impairment;[4]

5.     failed to properly consider her inability to obtain proper medical treatment as a factor excusing noncompliance with prescribed medical treatment; and

---

[4]Frazier conflates the ALJ's credibility assessment with his application of the Court of Appeals's standard for evaluating a claimant's subjective complaints; therefore, the court groups those issues together in its discussion.

7

6.      failed to properly consider the combination of her impairments.

The court addresses each argument.

**C.    *The ALJ's Adherence to the AC's Instructions on Remand***

In remanding the case to the ALJ for further proceedings, the AC instructed him to,

*inter alia*,

> [o]btain supplemental evidence from a vocational expert to
> clarify the effect of the assessed limitations on the claimant's
> occupational base (Social Security Ruling 83-12)).    The
> hypothetical questions should reflect the specific
> capacity/limitations established by the record as a whole.  The
> Administrative Law Judge will ask the vocational expert to
> identify examples of appropriate jobs and to state the incidence
> of such jobs in the national economy (20 CFR 416.966).

(R. 247).

The case was then transferred to a different ALJ, who conducted an entirely new

hearing, which included the testimony of a vocational expert ["VE"].  Referring to an RFC

assessment performed by a consultative examiner, as directed by the ALJ, the VE testified

that a person with the specific limitations outlined in the RFC, with Frazier's "age, education,

and vocational background", could perform Frazier's past relevant work as a bus driver and

cook (which he classified as light, semiskilled work) and could perform a full range of

sedentary and light work (R. 82-83).[5]

_____

[5]The ALJ directed the VE to rely upon the limitations detailed in an RFC performed by
James M. Parks, M.D., in which Dr. Parks determined that Frazier could sit, stand and walk for two

Probing further, the ALJ then asked the VE to consider, in addition to the information already before him, a vision report provided by J. Brooks, M.D., which concluded that, as of 28 June 1996, Frazier's vision was 20/50 with the best correction. The VE's assessment did not change (R. 84), and he identified four light jobs available in significant numbers locally and nationally that someone with Frazier's limitations and background could perform: fast food worker, hand packager, housekeeper/cleaner, and kitchen foods assembler (87-88).[6]

When based solely on the limitations set forth in a more recent RFC assessment,

---

hours at one time and six hours total during an eight-hour work day; frequently lift and carry up to 20 pounds; occasionally lift/carry between 21-25 pounds; and never lift or carry more than 25 pounds (R. 225). He also found that she could use her hands for repetitive actions such as simple grasping, pushing and pulling of arm controls and fine manipulation. *Id.* Dr. Parks also noted that she could use her feet for repetitive movements such as pushing and pulling of leg controls and occasionally could bend, crawl and reach. *Id.* She could not, however, squat or climb. *Id.* She was only mildly restricted from exposure to unprotected heights and moving machinery and from driving automotive equipment. *Id.* Finally, she was not restricted at all from exposure to marked changes in temperature and humidity or dust, fumes, and gases. *Id.*

[6]The ALJ later eliminated housekeeper/cleaner and asked the VE for one additional job he thought someone with Frazier's limitations and background could perform. The VE responded with "cafeteria attendant" (R. 89).

Frazier contends that "[a]ll of the jobs identified by the VE would have required that the Plaintiff be able to perform a full range of light and medium type work" (Doc. # 21, p. 9). She offers no support for this broad, conclusory assertion other than to point out that hand packager is "actually medium level work," referring to listing 920.587-018 in the Dictionary of Occupational Titles ["DOT"] (Doc. # 21, p. 9, n.3). DICTIONARY OF OCCUPATIONAL TITLES (4th ed., rev. 1991).

Although Frazier is correct that hand packager is not a light job, fast food worker (DOT # 311.472-010), kitchen foods assembler (DOT # 319.484-010), and cafeteria attendant (DOT # 311.677-010) are, and Frazier does not explain the basis for her conclusion that these jobs, individually, represent the full range of light work.

With respect to the VE's inclusion of housekeeper/cleaner, the transcript noted an incorrect DOT number, and housekeeping/cleaning positions vary in their strength requirements. As noted above, however, the ALJ eliminated that position.

which had indicated more severe restrictions than the previous assessment,[7] his conclusions did change, and he determined that Frazier would be limited to the full range of sedentary work (R. 86-87).

Despite what appears to have been an exceptionally thorough examination of the VE by the ALJ, Frazier contends that the ALJ failed to follow the AC's directives quoted *supra*.

Although directed at the ALJ's opinion, Frazier's argument, in essence, challenges the AC's denial of her request for review. She argues that the AC erroneously, albeit implicitly, decided that the ALJ satisfied its previous concerns, regardless of whether he had addressed them explicitly. Thus, Frazier challenges the AC's denial on grounds that are not subject to review by this court.

Frazier offers no legal authority to suggest otherwise, and the challenged decision simply does not fall within the limited circumstances under which the substance of an AC decision is reviewable. 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner . . . made after a hearing . . . may obtain a review of such decision . . .");

---

[7]Alan M. Babb, M.D., determined that Frazier could sit for eight hours both at one time and for the entire work day (R. 255). In addition, he limited her to one hour of standing at one time and total, and zero hours of walking at one time and one hour total for an eight-hour workday. *Id.* Dr. Babb concluded that she could continuously lift/carry up to ten pounds, frequently lift/carry 11-20 pounds, occasionally lift/carry 21-25 pounds and never lift/carry more than 25 pounds. *Id.* Like Dr. Parks, Dr. Babb concluded that she could frequently use her hands for simple grasping, pushing and pulling of arm controls and fine manipulation, but he found that she could only occasionally use her feet for pushing and pulling of leg controls. *Id.* Although Dr. Babb found that she could frequently reach overhead, he determined that she could never stoop, crouch, kneel, crawl, climb or balance. *Id.* Morever, she could never work around unprotected heights or moving machinery but could continuously drive automotive equipment and be exposed to marked changes in temperature and humidity as well as dust, fumes and gases. *Id.*

*Califano v. Sanders*, 430 U.S. 99, 108 (1977) (noting the jurisdictional limitation specified in section 405(g) to a review of final decisions made "after a hearing" and holding that the Commissioner's decision not to reopen a previous application without a hearing is subject to review only "in the rare instances where the [Commissioner's] denial . . . is challenged on constitutional grounds").[8]

Frazier's characterization of the AC's decision as "affirming" the ALJ's opinion is not inaccurate.  *See*, *e.g.*, *Sims*, 530 U.S. at 106.  As a technical matter, the AC's decision to deny review is a final decision ultimately concluding in rather boilerplate language that the ALJ correctly applied the law and drew conclusions that were properly supported by evidence in the record.  Thus, a review of the ALJ's opinion is at least an implicit and indirect review of the AC's adoption of that opinion.

---

[8] ***See also Sims v. Apfel***, 530 U.S. 103, 106 (2000) (interpreting section 405(g) and the regulations adopted thereunder to provide that "if the Appeals Council grants review . . . then the Council issues the Commissioner's final decision.  But, if . . . the Council denies the request for review, the ALJ's opinion becomes the final decision."); ***Falge v. Apfel***, 150 F.3d 1320, 1323 (11th Cir. 1998) (discussing the limits on judicial review of AC decisions, holding that "when the AC has denied review, we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence," and describing the instances in which the court will consider whether new evidence not before the ALJ warrants remand); ***Keeton v. Dep't of Health & Human Svcs.***, 21 F.3d 1064 (11th Cir. 1994) (noting that the AC's decision not to review new evidence was reviewable as legal error and concluding that the district court could consider evidence presented to the AC in deciding whether the AC's evaluation of the new evidence was proper); ***Stone v. Heckler***, 778 F.2d 645, 649 (11th Cir. 1985) (holding that the AC's denial of a motion to extend the time allowed for the claimant to file an action in the district court was not reviewable); ***Bloodsworth v. Heckler***, 703 F.2d 1233, 1236-39 (11th Cir. 1983) (describing an AC decision to deny review in general as "*finaliz*[*ing*]" the ALJ's decision and holding that a decision by the AC not to review the ALJ's decision because the request was untimely, as opposed to not warranted on the merits, as a final, reviewable decision).

In the context of this case, however, which presents none of the issues addressed by the cases cited *supra*, the AC decision appropriately at issue is merely its endorsement of the ALJ's opinion, which is no different than in most actions of this nature.  By challenging the ALJ's compliance with the AC's earlier directives, however, Frazier asks the court to second-guess one factual consideration that may have contributed to that decision  -   not the legal justification for adopting the ALJ's opinion.

In other words, with virtually no effort on her part to refine or accurately articulate her challenge, Frazier is attempting to argue that a preliminary factual conclusion possibly forming one aspect of the basis for the AC's acceptance of the ALJ's opinion (i.e., the ALJ complied with the instructions in the remand order), standing alone, is equivalent to a final decision of the Commissioner regardless of whether the ALJ's opinion is otherwise legally correct and supported by substantial evidence in the record.  Neither the statute nor the referenced case law supports this argument.

Whether the VE's testimony or the hypothetical question posed by the ALJ were sufficient are legal issues the court clearly is empowered to address in its review of the ALJ's opinion.  Frazier may not circumvent the deferential standard controlling the court's review of the ALJ's opinion by suggesting that the AC's denial of review itself constituted legal error because the ALJ failed to follow the AC's own instructions.

Assuming *arguendo* that the court does have jurisdiction to review the AC's decision in this context, Frazier's contention that the ALJ did not follow the instructions on remand is factually meritless.  The court's discussion *supra* of the relevant part of the hearing on

remand leads unavoidably to the conclusion that the ALJ's thorough questioning of the VE and the VE's detailed testimony at least arguably complied with the AC's instructions. The AC's implicit conclusion that the ALJ complied with its instructions is therefore supported by substantial evidence in the record.


D.      *The ALJ's RFC Assessment*

After discussing the evidence in the record, the ALJ concluded that Frazier was not disabled because, based on RFC assessments performed by her longtime treating physician and a consultative examiner, as well as the testimony of the VE, she could perform the full range of light and sedentary work. Taking into consideration her nonexertional limitation, *i.e.*, her limited vision, which was 20/50 with the best correction and which neither RFC assessment seemed to consider as a factor, the ALJ determined that prior to turning 55 years old, she could perform several specific jobs. All of them were within the light range and were identified by the VE as being available in significant numbers in the national economy (R. 23-24).

While the court does not completely disagree with Frazier's statement that "[a] quick review of the ALJ Anderson's questioning of the VE is . . . confusing," the ALJ's inquiries are no more confusing than Frazier's own efforts to challenge his RFC assessment. Moreover, the court will not brook a "quick review" of the record in this or any other case. Rather, the court has engaged in a thorough review of the issues in this case, viewing all of them contextually and in a manner designed to avoid confusion and encourage thoughtful

analysis.

Frazier appears to contend that the ALJ's RFC is incorrect because it conflicts with Dr. Babb's assessment performed on 30 December 1998.[9]  Assuming it does, Dr. Babb's RFC assessment, which was performed more than one year after the date Frazier became disabled and which does not relate back to the period preceding her 55th birthday, is irrelevant.  Moreover, the conclusions in Dr. Babb's examination report were hardly unequivocal, which calls into question the legitimacy of his RFC assessment (R. 249-52).

Frazier also contends that the ALJ did not adequately explain his RFC or relate it to the medical evidence in the record.  As should already be clear from the court's discussion, the ALJ's assessment was based on the relevant medical evidence as well as two authoritative, uncontradicted medical opinions, one of which was issued by her treating physician, who approximately 1 ½ months after Frazier's right kidney was removed, wrote:

> [S]he could handle most any type of work related activities except for extremely heavier or physical work at this point.  I would feel that she could probably do most any type of other work satisfactorily without difficulty.

(R. 158).  Three months later, he wrote:

> [S]he would be able to do any [work] activities as long as it did not require hard physical work or heavy lifting.  I would feel that she could perform most types of work, except very strenuous and heavy work.

(R. 156).

---

[9]*See supra* note 7.

14

Although the ALJ's opinion is less than crystalline, and something more involved than a "quick review" may be necessary for a thorough understanding, his explanation is nonetheless adequate.

**E.      *The ALJ's Hypothetical Question***

Frazier contends that the ALJ's hypothetical question was incomplete because it did not include Frazier's complaints of pain and her use of a cane to ambulate.  As discussed *infra*, the ALJ properly discredited Frazier's subjective complaints.  Therefore, it was not necessary for him to factor them into his hypothetical question.

Furthermore, as the ALJ noted, no medical evidence in the record indicates that Frazier required a cane to ambulate.  In fact, Dr. Babb, on whose RFC assessment Frazier attempts to rely, questioned whether the cane was anything more than a "prop," noting "I cannot identify her having any type of true rheumatologic or degenerative condition in her lower extremities" (R. 251).

Frazier fails to cite to any evidence in the record supporting her claim that she needed an assistive device during the relevant time period or even at the time of her hearing.[10]  That she chose to use a cane is simply not enough, particularly when considered in conjunction

---

[10]When asked to compare her condition at the second administrative hearing, which was held 3 March 1999, with her condition two years prior to the hearing (approximately 5 months before her 55th birthday), she described her current condition as worse.  "I could get up, you know, *I could get up, I could walk without anything*, but now I can't hardly get up, and I have to walk with a stick or a cane, whatever I can get to walk with.  And my back, when I get up, it hurts so bad to get up and down" (R. 73) (emphasis added).

15

with Dr. Babb's expressed skepticism.

## F.   *The ALJ's Application of the Pain Standard and Credibility Assessment*

The court has concluded that two findings by the ALJ reflect a correct, though not altogether obvious, application of the Court of Appeals's standard for evaluating a claimant's subjective complaints: First, the ALJ found that "the medical signs and laboratory findings do not establish disabling, medically determinable impairments prior to August 11, 1997, that would give rise to pain at such an intensity or persistence consistent with the claimant's testimony."   Second, he concluded that the evidence in the record "neither confirms the severity of the symptoms alleged, nor the existence of an impairment or combination of impairments which could reasonably be expected to give rise thereto".   Furthermore, his conclusion is supported by substantial evidence in the record.  *See, e.g.*, ***Holt v. Sullivan***, 921 F.2d 1221, 1223 (11th Cir. 1991)**.**

Frazier's reliance on Dr. James W. Mathews Jr.'s notes from her office visits[11] to challenge the ALJ's conclusion is problematic  -  primarily for two  reasons.  First, these records reflect sporadic complaints of an unspecified level of back pain "off and on" (R. 159-61) and little else of any relevance.

On 16 December 1992, 15 months prior to her alleged disability onset date, Dr. Mathews noted that "[f]or the last week [Frazier] has had pain in the right lower back radiating out the right hip into the right leg.  Sometimes it makes her right leg weak.  It is

---

[11]The notes span the period from November 1992 to September 1994.

sometimes worse after she has been standing for a while and makes it difficult for her to walk" (R. 161).  He concluded that "this *could be* osteoarthritis vs a disk," which, Frazier's contention to the contrary notwithstanding, is more an educated guess than a diagnosis (Doc. # 21, p. 13).[12]

Second, and more importantly, on October 1994, Dr. Mathews offered two separate opinion letters, set forth more fully *supra*, in which he concluded that Frazier could perform all work activity that did not involve "hard" or "very" strenuous work or "heavy" lifting (R. 156-58).  Had Frazier's complaints to Dr. Mathews suggested that she was suffering from severe pain, it is highly unlikely that he would have offered such unequivocally optimistic opinions about her ability to work.[13]

Frazier also challenges the ALJ's assessment of her credibility on the grounds

_____

[12]At this same visit, Dr. Mathews stated his intention to "get an x-ray and send her to physical therapy for a week" (R. 161).  Yet, there is no evidence in the record of either an x-ray or physical therapy.  Nevertheless, Frazier, after referring to what she understood to be Dr. Mathews's diagnosis of osteoarthritis, states, "The x-ray *apparently* revealed marked narrowing of the disc spaces at multiple levels" (Doc. # 21, p. 13) (emphasis added).  Frazier's qualifier is, *apparently*, her means of avoiding having to actually cite to an x-ray report supporting her apparently speculative conclusion regarding the space between her discs.  A review of the record reveals no x-ray report reflecting Frazier's conclusions.

[13]Although Frazier does not cite to Dr. Parks's examination, he noted on 11 July 1996, that Frazier exhibited "lower lumbar perivertebral muscle spasms" when standing and "limited forward flexion," which "evidence[d] chronic lumbar strain" (R. 219).  In the context of the entire record, however, and when contrasted with Dr. Mathews's records and conclusions, Dr. Parks's vague assessment is of little value in evaluating her subjective complaints.  Moreover, the RFC assessment performed by Dr. Parks one month after making these observations indicate his opinion that her back condition, and, presumably the pain arising therefrom, was not prohibitive (R. 225).  Therefore, the ALJ's evaluation of her subjective complaints was not erroneous and his conclusion is supported by substantial evidence in the record.

that he failed to take into consideration or develop the record regarding what she now claims is a mental impairment.  In support of her alleged mental impairment, Frazier refers to her testimony that she lost her job as a bus driver "because of her inability to pass the written test to become certified to drive" (Doc. # 21, p. 13) as well as statements by Dr. Babb regarding what he referred to as her "poor intellectual skills" (R. 251).

Frazier's inability to pass the test, however, was attributed to "blurry vision", not an inability to comprehend basic written English (R. 48).  Moreover, Dr. Babb's conclusion is consistent with Frazier's limited education, which the ALJ clearly considered.[14]

G.     *Noncompliance and Consideration of Impairments in Combination*

Frazier's remaining arguments merit little consideration.  Noncompliance simply was not a basis for the ALJ's partial denial of benefits, and his opinion makes clear that he considered all of her impairments individually and in combination.

IV.   CONCLUSION

---

[14]Frazier quite correctly notes that Dr. Babb's statement that Frazier seemed "very poorly motivated" (R. 249, 251) "*could*" reflect "her lack of understanding and comprehension" (Doc. # 21, p. 12) (emphasis added).  Although Frazier does not attempt to flesh out the rationale underlying her proffered conclusion, her conclusion is nonetheless plausible.  Of course, other conclusions are equally plausible, and this one statement is hardly sufficient to suggest a mental impairment beyond what may be reflected by her limited education.  Thus, *McCall v. Bowen*, to which Frazier cites for support, is not applicable. 846 F.2d 1317, 1320 (11th Cir. 1988) (noting that the "plaintiff's physicians have at times suggested that she might be suffering from a psychological condition.  They have informed her that she suffered from 'anxiety and nerves and a lot of stress,' they have commented that she was 'somewhat apprehensive,' and they have prescribed Valium for her anxiety.").

Accordingly, it is hereby

ORDERED that the decision of the Commissioner is AFFIRMED.

DONE this 8th day of February 2006.


                              /s/ Vanzetta Penn McPherson
                              VANZETTA PENN MCPHERSON
                              UNITED STATES MAGISTRATE JUDGE